UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KASHARD OMAR BROWN,

    Petitioner,

vs.

BRIAN E. WILLIAMS, et al.,

    Respondents.

Case No. 2:11-cv-01058-JCM-CWH

**ORDER**

    Before the court are the amended petition for writ of habeas corpus (#31), respondents' motion to dismiss (#42), petitioner's opposition (#55), and respondents' reply (#58). The court grants the motion in part.

    The basic facts are that petitioner, along with a friend named Lawrence Casias, entered petitioner's apartment in the early morning of September 8, 2001. Petitioner told Casias that he thought somebody else was in the apartment, and petitioner picked up his sawed-off shotgun. Petitioner left the sight of Casias. Casias heard petitioner's girlfriend, Rebekah Hanson, call petitioner's name, and then he heard the shotgun fire. Petitioner reappeared and dropped the shotgun. The stock of the shotgun separated from the rest of the shotgun. Petitioner was charged with possession of a short-barreled shotgun and murder with the use of a deadly weapon. Petitioner's defense was that the shooting was an accident.

After a jury trial in state district court, petitioner was convicted of both counts. Ex. 62 (#44).[1] Petitioner appealed. At first, the Nevada Supreme Court affirmed on most grounds and reversed on the ground that the jury was not properly instructed on the prosecution's burden of disproving petitioner's defense that the killing was an accident. Ex. 86 (#45). After entertaining an untimely petition for rehearing, the Nevada Supreme Court vacated its earlier order and affirmed on all grounds. Ex. 98 (#45).

Petitioner, represented by retained counsel, filed a state habeas corpus petition and a supplement. Ex. 107, Ex. 108 (#47). Petitioner, still represented by counsel, then filed a proper-person motion for leave to amend his petition.[2] Ex. 113 (#47). Along with that motion, he filed a proposed amended petition and a proposed memorandum of points and authorities. Ex. 114, 112 (#47). Later, he filed a proper-person supplement. Ex. 115 (#47). The state district court held an evidentiary hearing on the claim that petitioner's trial counsel was ineffective because counsel had not investigated or called as a witness Donald Lang.[3] Ex. 136 (#48). The state district court found that all of petitioner's claims lacked merit. Ex. 144 (#48). Petitioner appealed, and he new counsel was appointed. The Nevada Supreme Court affirmed. Ex. 214 (#49).

Petitioner then commenced this action. The original petition (#1) was filed by the attorney who represented petitioner in his state habeas corpus appeal. The court appointed the Federal Public Defender, who filed an amended petition (#31).

Respondents first argue that some grounds in the amended petition (#31) are untimely. The original petition (#1) is timely pursuant to 28 U.S.C. § 2244(d)(1). The amended petition was filed after expiration of the one-year period of § 2244(d)(1). Respondents argue that grounds 1(A), 1(C),

---

[1]Citations to "Ex." are to the exhibits that respondents filed in support of their motion to dismiss (#42). The court cites to respondents' exhibits where possible because they are easier to find individually on CM/ECF. Citations to "Petitioner's Ex." are to the exhibits that petitioner filed in support of his original petition (#1) or in support of his amended petition (#31), which current counsel did file as separate, individually designated files.

[2]Petitioner also filed a motion seeking replacement of his attorney. Ex. 116 (#47). Ultimately, he decided to keep that attorney. Ex. 122 (#47).

[3]Lang was a pre-operative transsexual who went by the name "Donna Lang."

-2-

and by implication part of the cumulative-error claim in ground 8, do not relate back to the original petition. Relation back, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure, is allowed "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts . . . ." Mayle v. Felix, 545 U.S. 644, 664 (2005).

Ground 1(A) in the amended petition is a claim that trial counsel provided ineffective assistance because trial counsel failed to interview, investigate, or call Lang as a witness. Ground 1(B) in the original petition is the equivalent claim. In ground 1(B) of the original petition, petitioner claimed:

> Lang had indicated that he was present at the scene and knew the shooting was an accident. More importantly, Lang could have testified that Mr. Brown had no idea Ms. Hanson was in the apartment when the shooting occurred, since Lang told Mr. Brown that he and Ms. Hanson were elsewhere just prior to his return to the apartment.

Petition, at 41 (#1). In ground 1(A) of the amended petition, petitioner provides more specific facts in support of the claim. First, Lang could have testified that Hanson did not want petitioner to know where she was because the two had argued earlier, and Hanson planned to sneak into the apartment to retrieve drugs that she and Lang intended to use later. Second, Lang could have testified that it was common for Hanson to sneak into the apartment. Third, Lang could have testified that petitioner had changed the lock on the apartment's door, that Hanson did not have a key to the new lock, that Hanson had climbed into the apartment through a window before the night of the shooting, and thus Hanson would have climbed into the apartment on the night of the shooting. Fourth, Lang could have corroborated testimony that the shotgun used in the shooting had a faulty stock and that petitioner had unintentionally discharged the shotgun a few days before the shooting.

The issue of relation back is similar to the issue presented in Valdovinos v. McGrath, 598 F.3d 568 (9th Cir. 2010), vacated on other grounds by Horel v. Valdovinos, 131 S. Ct. 1042 (2011). In Valdovinos, the petitioner claimed in both original and amended petitions that counsel was ineffective for failing to investigate potentially exculpatory evidence upon learning that the prosecution had suppressed the evidence. Valdovinos' amended petition alleged four more pieces of evidence that counsel did not investigate. The court of appeals held that the original petition provided notice of the claim that counsel failed to investigate, and that the amended petition simply

added more evidence that counsel could have found in an investigation. Consequently, the amended petition related back to the original petition. 598 F.3d at 575-76. In the case before this court, the legal theory and operative facts in ground 1(A) of the amended petition and ground 1(B) of the original petition are the same: Counsel did not investigate, interview, or call Lang to testify. Petitioner has simply added to his claim more evidence that counsel could have obtained from Lang. Ground 1(A) of the amended petition relates back to ground 1(B) of the original petition.

Ground 1(C) of the amended petition is a claim that trial counsel provided ineffective assistance because trial counsel did not call as witnesses Helen Holt and Clay Nealy. Ground 1(D) is the equivalent ground in the original petition. In both grounds, petitioner alleges that these witnesses could have testified to petitioner's emotional state immediately after the shooting, because petitioner had called them after the shooting and told them to call 911. In ground 1(C) of the amended petition, petitioner alleges that Nealy went to petitioner's apartment complex, met petitioner's mother, and then left the complex before the police arrived. Just as with ground 1(A) of the amended petition, the legal theory and the operative facts are the same. Petitioner simply adds more evidence that counsel could have obtained from these witnesses. Ground 1(C) of the amended petition relates back to ground 1(D) of the amended petition.

Ground 8 of the amended petition is a claim of cumulative error. Respondents argue that ground 8 is untimely in part to the extent that it encompasses grounds 1(A) and 1(C). The court finds that ground 8 is timely because it has found that grounds 1(A) and 1(C) are timely.

Respondents next argue that petitioner has not exhausted his available state-court remedies for grounds 1(A), 1(B), 1(C), and 2. Before a federal court may consider a petition for a writ of habeas corpus, the petitioner must exhaust the remedies available in state court. 28 U.S.C. § 2254(b). To exhaust a ground for relief, a petitioner must fairly present that ground to the state's highest court, describing the operative facts and legal theory, and give that court the opportunity to address and resolve the ground. See Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam); Anderson v. Harless, 459 U.S. 4, 6 (1982).

The court does not agree with respondents' argument that the new facts, described above, that petitioner alleges in grounds 1(A) and 1(C) make them unexhausted. The new facts do not

fundamentally alter the claims. See Vasquez v. Hillery, 474 U.S. 254, 260 (1986).[4] Grounds 1(A) and 1(C) are exhausted.

Ground 1(B) is a claim of ineffective assistance of trial counsel relating to the defense's expert on firearms. Petitioner claims that trial counsel concealed information about the faulty stock of the shotgun from the defense's expert witness on firearms. The bolt that held the stock onto the gun was missing, and thus only friction or tape held the stock to the gun. The firearms expert states that he did not receive the shotgun with the faulty stock. He further states that had he known that the stock was loose, he could have testified that if the stock had shifted while petitioner was holding the gun, then petitioner might have unintentionally pulled the trigger and discharged the gun. Petitioner's Ex. 143, internal Ex. A-1 (#19-1, at 31).

In his state habeas corpus petition, petitioner claimed that trial counsel provided ineffective assistance for not calling the firearms expert to testify. Ex. 112A, at 30-37 (#47). Petitioner presented that issue to the Nevada Supreme Court on appeal from the denial of the petition. Ex. 181A, at 31-33 (#50). In those documents, petitioner did not raise the claim that counsel concealed information about the faulty stock from the firearms expert. Only after appellate briefing had concluded did petitioner raise the claim about counsel's concealment, in a motion to admit newly-discovered evidence and to supplement or amend petition and in a motion for limited remand. Ex. 202, Ex. 209 (#49). In its decision on the habeas corpus appeal, the Nevada Supreme Court held:

---

[4] A tension exists in the law regarding the presentation of new facts in federal habeas corpus petitions. Vasquez held that new factual allegations do not make a ground unexhausted if those new facts do not fundamentally alter the claim considered by the state courts. Recently, the Supreme Court held that when a federal court reviews a claim, the merits of which have been decided by a state court, then pursuant to 28 U.S.C. § 2254(d) the review is restricted to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). In other words, if Vasquez is still good law, then it is possible for a ground alleging new facts to survive a challenge to its exhaustion, but the court would be unable to consider those new facts if 28 U.S.C. § 2254(d) is applicable. The court of appeals has recognized this tension, but has deferred answering the question. Stokley v. Ryan, 659 F.3d 802, 808 (9th Cir. 2011).
   This court will treat Vasquez and Pinholster as separate questions. For grounds 1(A) and 1(C), the court rules that new factual allegations do not make the ground unexhausted. This ruling is consistent with Vasquez. Whether the court can consider the new factual allegations in its review of the grounds on their merits is a question that the court will answer when the court turns to the merits.

> On December 30, 2010, appellant field a "motion to admit newly-discovered evidence and supplement or amend petition" and on January 19, 2011, appellant filed a "motion for limited remand." The State opposed the motions and appellant responded. Both of appellant's motions discuss a report and purported testimony from Robert Irvin, a firearms expert. This evidence was not presented to the district court and as such, we decline to consider this evidence in this appeal and deny these motions. See Davis v. State, 107 Nev. 600, 606, 817 P.2d 1169, 1173 (1991), <u>overruled on other grounds by</u> Means v. State, 120 Nev. 1001, 1012-13, 103 P.3d 25, 33 (2004).

Ex. 214, at 6 n.2 (#49). "Submitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation." Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994) (citing Castille v. Peoples, 489 U.S. 346, 351 (1989)). Petitioner argues that in the case that the Nevada Supreme Court cites, Davis v. State, the Nevada Supreme Court did consider a claim that was raised in a procedurally incorrect context. In Davis, the Nevada Supreme Court held:

> In his direct appeal, appellant alleged that the prosecution made a number of improper references during closing argument. This contention was dismissed because defense counsel failed to object to the statements at trial. Appellant now contends that counsel's failure to object constituted ineffective assistance. This ground for relief was not part of appellant's original petition for post-conviction relief and was not considered in the district court's order denying that petition. Hence, it need not be considered by this court. McKay v. City of Las Vegas, 106 Nev. 203, 207, 789 P.2d 584, 586 (1990). <u>We will nevertheless discuss the allegations of misconduct because of the seriousness of the issues raised.</u>

Davis v. State, 817 P.2d 1169, 1173 (Nev. 1991) (emphasis added). In Davis, the Nevada Supreme Court stated the general rule that a ground needs to be raised in the post-conviction petition before it can be raised on appeal, and then the Nevada Supreme Court stated that it could consider improperly raised claims in special circumstances. In petitioner's case, the Nevada Supreme Court determined that no special circumstances existed. Roettgen and Castille then make clear that a claim raised in a procedurally incorrect manner, and which the state courts do not address, is not exhausted. Consequently, ground 1(B) is unexhausted.

In ground 2, petitioner claims that the trial court erred when it did not allow petitioner to present his theory of the case and when it gave incorrect jury instructions about petitioner's theory of the case. On direct appeal, the Nevada Supreme Court first concluded that the jury was properly instructed on petitioner's accident defense but that the jury was improperly instructed on the prosecution's burden of proof concerning that defense. The Nevada Supreme Court reversed the

-6-

judgment of conviction. Ex. 86, at 3-4 (#45). Upon rehearing, the Nevada Supreme Court again concluded that the instructions did not inform the jury that the prosecution had the burden of disproving accident beyond a reasonable doubt. Ex. 98, at 4-5 (#45). The Nevada Supreme Court then stated that the failure to give the correct instruction was subject to harmless-error analysis, and it concluded that the error in petitioner's case was harmless. Id., at 5.

      Respondents argue that petitioner has presented two issues to this court that he did not present to the Nevada Supreme Court. First, petitioner argues that the Nevada Supreme Court used the wrong standard for harmless-error analysis. It is irrelevant whether petitioner argued this point to the Nevada Supreme Court. This court does not review the Nevada Supreme Court's harmless-error analysis for reasonableness. Instead, this court uses its own, more forgiving standard for analyzing whether an error is harmless. Fry v. Pliler, 551 U.S. 112, 119-20 (2007); Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir. 2010). See also Brecht v. Abrahamson, 507 U.S. 619 (1993) (setting forth the harmless-error analysis for federal habeas corpus). Second, petitioner argues that the error in the jury instruction was structural, and not capable of harmless-error analysis. When the Nevada Supreme Court determined that the error in the instruction was capable of harmless-error analysis, that court cited to Crawford v. State, 121 P.3d 582, 590 & n.30 (Nev. 2005). Crawford, in turn, based its holding upon Sullivan v. Louisiana, 508 U.S. 275, 279 (1993), noting that some errors in instructions are harmless "where it is clear beyond a reasonable doubt that the guilty verdict actually rendered in the case was 'surely unattributable to the error.'" Crawford, 121 P.3d at 590 n.30. "Of course, a claim is exhausted if the State's highest court expressly addresses the claim, whether or not it was fairly presented." Casey v. Moore, 386 F.3d 896, 916 n.18 (9th Cir. 2004) (citing Castille v. Peoples, 489 U.S. 346, 351 (1989)). The Nevada Supreme Court's determination that the harmless-error analysis was appropriate necessarily included a determination that the error was not structural. Petitioner did not present the issue of structural error to the Nevada Supreme Court, but the Nevada Supreme Court's own analysis exhausted the issue. Ground 2 is exhausted.

      Respondents argue that ground 6 is procedurally defaulted. In ground 6, petitioner claims that the prosecution engaged in misconduct regarding Lang. Petitioner argues that Lang had written

letters soon after the shooting, indicating that Lang had witnessed the shooting. Then, after the prosecutors visited Lang in prison,[5] Lang wrote a letter to petitioner stating that a third person had misinformed the prosecutors and that Lang never claimed to have witnessed the shooting. Petitioner did not raise the claim of prosecutorial misconduct on direct appeal, for which he claims in ground 1(I) that appellate counsel provided ineffective assistance. The Nevada Supreme Court ruled on the ineffective-assistance claim on its merits. Ex. 214, at 8 (#49). On the underlying claim, the Nevada Supreme Court held:

> To the extent that appellant raises this claim independent of his claim of ineffective assistance of counsel, we conclude that appellant fails to demonstrate cause for his failure to raise this claim on direct appeal. NRS 34.810(1)(b).

Ex. 214, at 8 n.4 (#49).

A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state-law ground that is independent of the federal question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 730-31 (1991).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750; see also Murray v. Carrier, 477 U.S. 478, 485 (1986). The grounds for dismissal upon which the Nevada Supreme Court relied in this case is an adequate and independent state rules. Vang v. Nevada, 329 F.3d 1069, 1074 (9th Cir. 2003).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. Carrier, 477 U.S. at 488.

To show prejudice, "[t]he habeas petitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage,

---

[5]Shortly after petitioner shot Hanson, Lang was arrested and sent to prison on matters unrelated to this case.

infecting his entire trial with error of constitutional dimensions.'" <u>Carrier</u>, 477 U.S. at 494 (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)) (emphasis in original).

Petitioner argues that the ineffective assistance of appellate counsel was good cause to excuse the procedural default. However, petitioner does not argue what prejudice he has suffered from the procedural default. That alone is sufficient for the court not to consider petitioner's arguments. <u>See</u> <u>Casey v. Moore</u>, 386 F.3d 896, 921 n. 27 (9th Cir. 2004). Additionally, petitioner cannot demonstrate prejudice. Petitioner submitted a declaration written by Lang in support of his amended petition. Lang stated, in relevant part:

> 6.   Rebekah and I planned to meet at the home of a mutual friend, Tiffany. I left Omar's apartment and headed to Tiffany's house, which was on the other side of town. As it happened, Tiffany was also out that evening, and she was just getting home by the time I arrived at her place. Rebekah, meanwhile, had already tried to get into Tiffany's house and, finding her not home, left. I contacted Rebekah from Tiffany's house, and we made plans to meet back at Omar's apartment—by that time, he was not home and Rebekah could sneak in freely. I left Tiffany's and headed back to Omar's to meet Rebekah there.
>
> 7.   <u>When I arrived at Omar's apartment to meet Rebekah, I found only her inside, lying on her back, clearly dead.</u> I was shocked and horrified, but also aware of the fact I was standing in a crime scene, and fearful of being arrested. I quickly left the apartment. As I was crossing the apartment complex to leave, police arrived and refused to let anybody in the area leave. While we waited, I spoke with relatives of Omar's or Rebekah's—I cannot remember which. Everybody was distraught and crying. Because the police did not then know I was friends with Rebekah, I was eventually able to sneak out of the complex and head to back to [sic] Tiffany's house without being questioned that morning.
>
> 8.   I returned to Omar's apartment complex the morning after Rebekah died and was interviewed by a detective there. During the interview, I told them a week or so before Rebekah died, Omar's shotgun accidentally fired and blew a hole in the wall of his apartment. This happened during a confrontation between Omar and some Mexican men in the complex that he had been having problems with. I told the detectives about this accidental shooting because I felt it was a sign that the gun was faulty, and that Omar could have accidentally shot Rebekah.
>
> [. . .]
>
> 13.   While I was in prison, employees of the District Attorney's office came to interview me about Omar's case. <u>While I do not remember our exact conversation, I am certain I would have given them the same information that is included in this declaration, if asked.</u> It was no secret that Rebekah and I were drug users, that Omar sold drugs, and that we lived an alternative lifestyle—I would have recounted the events surrounding Rebekah's death frankly as I have in this declaration.

Petitioner's Ex. 153 (#32) (emphasis added). Lang signed this declaration on December 2, 2011, long after petitioner's trial had concluded, and apparently after he had been released from prison. Whatever threats the prosecution had held over him, if any, had long since become stale. If Lang

-9-

1  wanted to state that the prosecution had pressured him into changing his story, then this declaration
2  was the opportunity.  Petitioner continues to state that he arrived at the scene of the crime shortly
3  after Hanson was killed.  He did not witness the shooting himself.  There was no prosecutorial
4  misconduct.  Consequently, petitioner did not suffer any prejudice from the procedural default.  The
5  court will dismiss ground 6.

6        The amended petition (#31) is mixed, containing both claims exhausted in state court and
7  claims not exhausted in state court, and it is subject to dismissal.  See Rose v. Lundy, 455 U.S. 509,
8  521-22 (1982); Szeto v. Rushen, 709 F.2d 1340, 1341 (9th Cir. 1983).

9        IT IS THEREFORE ORDERED that respondents' motion to dismiss (#42) is **GRANTED** in
10 part.  Ground 1(B) is unexhausted.

11       IT IS FURTHER ORDERED that petitioner shall have thirty (30) days from the date of entry
12 of this order to file a motion for dismissal without prejudice of the entire petition, for partial
13 dismissal of ground 1(B), or for other appropriate relief.  Within ten (10) days of filing such motion,
14 petitioner must file a signed declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 that
15 he has conferred with his counsel in this matter regarding his options, that he has read the motion,
16 and that he has authorized that the relief sought therein be requested.  Failure to comply with this
17 order will result in the dismissal of this action.

18       IT IS FURTHER ORDERED that if petitioner elects to dismiss the aforementioned grounds
19 of his amended petition (#31) and proceed on the remaining grounds, respondents shall file and
20 serve an answer or other response to the remaining grounds within forty-five (45) days after
21 petitioner serves his declaration dismissing those grounds.  If respondents file and serve an answer,
22 it shall comply with Rule 5 of the Rules Governing Section 2254 Cases in the United States District
23 Courts.

24       IT IS FURTHER ORDERED that if respondents file and serve an answer, petitioner shall
25 have forty-five (45) days from the date on which the answer is served to file and serve a reply.
26 ///
27 ///
28 ///

IT IS FURTHER ORDERED that ground 6 of the amended petition (#31) is **DISMISSED** with prejudice because it is procedurally defaulted.

DATED: March 12, 2013.

_____
JAMES C. MAHAN
United States District Judge